AO 442 (Rev. 6/97) Warrant for Arrest

# United States District Court
Northern District of Illinois
Eastern Division

United States of America

v.

Bruce Hawkins

WARRANT FOR ARREST

CO Cse # 12-mj-01155-KLM

Case Number: 12 CR 889

To: The United States Marshal
And any Authorized United States Officer

YOU ARE HEREBY COMMANDED to arrest **Bruce Hawkins** and bring him or her forthwith to the nearest magistrate judge to answer a(n)

X Indictment Information Complaint Order of court Violation Notice Probation Violation Petition

charging him or her with: **Bank Fraud**

in violation of Title 18 United States Code, Section(s) 1344

Laura Springer Issuing Officer

Laura Springer
Signature of Issuing Officer

November 16, 2012 Chicago, Illinois

Bail fixed at $

Judicial Officer

| RETURN | | |
|---|---|---|
| This warrant was received and executed with the arrest of the above-named defendant at 10687 St. Paul Ct Northglenn, CO 80233 | | |
| Date Received | Name and Title of Arresting Officer | Signature of Arrest Officer |
| 11/16/2012 | | |
| Date of Arrest | | |
| 11/19/2012 | | |

NOV 15 2012

JUDGE DOW

MAGISTRATE JUDGE GILBERT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CO Cse #12-mj-01155-NMT

UNITED STATES OF AMERICA )
)
v. ) No. 12 CR 0[illegible]
)
BRUCE HAWKINS ) Violation: Title 18, United States Code,
) 1344

**UNDER SEAL**

**COUNTS ONE THROUGH EIGHT**

The SPECIAL JANUARY 2012 GRAND JURY charges:

1. At times material to this indictment:

a. Defendant BRUCE HAWKINS was the owner of Aspen Homebuilders, Inc., which was in the business of developing commercial and residential properties.

b. Amcore Bank was a financial institution, whose deposits were insured by the Federal Deposit Insurance Corporation.

c. Riverside Square, LLC was an Illinois Limited Liability Company incorporated by defendant HAWKINS for the purpose of constructing "Riverside Square," a commercial and residential property development, located at 1100 W. Algonquin Road, Algonquin, Illinois.

d. On or about September 25, 2006, defendant HAWKINS, on behalf of Riverside Square, LLC and Amcore Bank, entered into a commercial loan agreement whereby Amcore Bank agreed to finance the construction of Riverside Square by providing a $13,540,000 loan to Riverside Square, LLC.

e. In order to obtain funds from the Amcore Bank loan, defendant HAWKINS submitted Sworn Contractor Statements to Amcore Bank in which he verified that subcontractors and his company were owed the identified funds for work performed on Riverside Square. In addition, the subcontractors and defendant HAWKINS submitted Waiver of Lien forms and Contract Invoices for work performed to the title company, which was designated by Amcore Bank to keep and disburse funds for the development of Riverside Square. Once these documents were submitted, Amcore Bank authorized the title company to disburse funds to the subcontractors and defendant HAWKINS.

f. Amcore Bank required its loan recipients to provide truthful information about the expenditure of loan proceeds in the development of real estate projects, including truthful information about the construction work performed by the developer and the subcontractors, and the cost of the construction work. This information was material to the bank's decision about, among other things, payment of loan proceeds for the Riverside Square project.

2. Beginning no later than in or around January 2007, and continuing until in or around June 2008, at Algonquin, in the Northern District of Illinois, Eastern Division, and elsewhere,

BRUCE HAWKINS,

defendant herein, knowingly devised and participated in a scheme to defraud a financial institution, namely Amcore Bank, and to obtain money and funds owned by and under the custody and control of Amcore Bank by means of materially false and fraudulent pretenses, representations, and promises.

3. It was part of the scheme that defendant HAWKINS fraudulently obtained approximately $1,017,183 from Amcore Bank by submitting and causing the submission of false

Sworn Contractor Statements, Waiver of Liens, and Contract Invoices that requested funds for permits, construction work, and consulting work for Riverside Square.

**False Statements about Building Permits**

4. It was further part of the scheme that defendant HAWKINS, on or about January 11, 2007, submitted a fraudulent Waiver of Lien to the title company, and on or about January 17, 2007, submitted a fraudulent Sworn Contractor Statement to Amcore Bank, in which he falsely affirmed that $200,000 was needed from the loan proceeds for building permits from the Village of Algonquin for the construction of Riverside Square. As a result of defendant HAWKINS's submission of the fraudulent Waiver of Lien and Sworn Contractor Statement, Amcore Bank disbursed $200,000 to defendant HAWKINS from the Amcore Bank loan proceeds.

5. It was further part of the scheme that defendant HAWKINS, on or about May 11, 2007, submitted a fraudulent Sworn Contractor Statement to Amcore Bank, and on or about May 15, 2007, submitted a fraudulent Waiver of Lien to the title company, in which he falsely affirmed that $200,000 was needed from the loan proceeds for building permits from the Village of Algonquin for the construction of Riverside Square. As a result of defendant HAWKINS's submission of the fraudulent Waiver of Lien and Sworn Contractor Statement, Amcore Bank disbursed $200,000 to defendant HAWKINS from the Amcore Bank loan proceeds.

6. It was further part of the scheme that defendant HAWKINS, on or about February 20, 2008, submitted a fraudulent Sworn Contractor Statement to Amcore Bank, and on or about February 29, 2008, submitted a fraudulent Waiver of Lien to the title company, in which he falsely affirmed that $225,000 was needed from the loan proceeds for building permits from the Village of Algonquin for the construction of Riverside Square. As a result of defendant HAWKINS's submission of the

fraudulent Waiver of Lien and Sworn Contractor Statement, Amcore Bank disbursed $225,000 to defendant HAWKINS from the Amcore Bank loan proceeds.

**False Statements about Masonry Work**

7. It was further part of the scheme that defendant HAWKINS, in or about April 2008, informed Subcontractor A that he would manually alter Subcontractor A's Contract Invoices to falsely reflect additional payment for masonry work that had not been performed by Subcontractor A. Defendant HAWKINS directed Subcontractor A, upon receipt of payment from the title company, to keep the amount he was legitimately owed for masonry work on Riverside Square, but to provide him with a check for the remaining amount.

8. It was further part of the scheme that defendant HAWKINS, in or about April 2008, handwrote an additional $50,000 on a Contract Invoice from Subcontractor A falsely representing that this amount was claimed by Subcontractor A for masonry work purportedly performed on Riverside Square. Defendant HAWKINS submitted and caused the submission of the false Contract Invoice and an accompanying false Waiver of Lien to the title company. Defendant HAWKINS also submitted and caused the submission, on or about April 23, 2008, of a false Sworn Contractor Statement to Amcore Bank that reflected the additional $50,000, which resulted in the title company issuing the requested payment to Subcontractor A from the Amcore Bank loan proceeds.

9. It was further part of the scheme that, on or about May 2, 2008, defendant HAWKINS received and deposited a check obtained from Subcontractor A for a total of $50,000 for the amount defendant HAWKINS fraudulently claimed from Amcore Bank.

10. It was further part of the scheme that defendant HAWKINS, in or about May 2008, handwrote an additional $100,000 on a Contract Invoice from Subcontractor A falsely reflecting that

this amount was claimed by Subcontractor A for masonry work purportedly performed on Riverside Square. Defendant HAWKINS submitted and caused the submission of the false Contract Invoice and an accompanying false Waiver of Lien to the title company. Defendant HAWKINS also submitted and caused the submission, on or about May 13, 2008, of a false Sworn Contractor Statement to Amcore Bank that reflected the additional $100,000, which resulted in the title company issuing the requested payment to Subcontractor A from the Amcore Bank loan proceeds.

11. It was further part of the scheme that defendant HAWKINS, in or about June 2008, received and deposited checks obtained from Subcontractor A for a total of $100,000 for the additional amount defendant HAWKINS fraudulently claimed from Amcore Bank.

12. It was further part of the scheme that defendant HAWKINS, in or about June 2008, manually altered a Contract Invoice received from Subcontractor A by changing a "6" to an "8" and a "3" to an "8" such that the claimed amount of $163,700 read $188,700. Through this method, defendant HAWKINS falsely represented that Subcontractor A claimed an additional $25,000 for masonry work purportedly performed on Riverside Square. Defendant HAWKINS submitted and caused the submission of the false Contract Invoice and an accompanying false Waiver of Lien to the title company. Defendant HAWKINS also submitted and caused the submission of, on or about June 24, 2008, a false Sworn Contractor Statement to Amcore Bank that reflected the additional $25,000, which resulted in the title company issuing the requested payment to defendant HAWKINS from the Amcore Bank loan proceeds.

13. It was further part of the scheme that, in or about July 2008, defendant HAWKINS received and deposited a check obtained from Subcontractor A for $25,000 for the additional amount defendant HAWKINS fraudulently claimed from Amcore Bank.

**False Statements about Consulting Work**

14. It was further part of the scheme that defendant HAWKINS, through a false Contract Invoice, sought to pay off a debt obligation of approximately $72,183 that he owed to Subcontractor B using Amcore Bank loan proceeds.

15. It was further part of the scheme that defendant HAWKINS, in or about May 2008, directed Subcontractor B to create a false Contract Invoice for approximately $72,183 and submit it to him for consulting work purportedly performed on Riverside Square. Subcontractor B did not perform any consulting work for Riverside Square.

16. It was further part of the scheme that defendant HAWKINS, in or about May 2008, submitted and caused the submission of a false Waiver of Lien and Contract Invoice for approximately $72,183 to the title company. Defendant HAWKINS also submitted and caused the submission of, on or about May 13, 2008, a false Sworn Contractor Statement to Amcore Bank that claimed payment of approximately $72,183 for work performed on Riverside Square, which resulted in the title company issuing the requested payment to Subcontractor B from the Amcore Bank loan proceeds.

17. It was further part of the scheme that defendant HAWKINS discharged his debt obligation to Subcontractor B through fraudulent means when Subcontractor B received payment of approximately $72,183 from Amcore Bank.

**False Statements about Materials**

18. It was further part of the scheme that defendant HAWKINS, through a false Contract Invoice, sought to pay off a debt obligation of $130,000 that he owed to Subcontractor C using Amcore Bank loan proceeds.

19. It was further part of the scheme that defendant HAWKINS, in or about January 2007, directed Subcontractor C to create a Waiver of Lien for $145,000, falsely claiming payment for the supply of doors and windows for Riverside Square. Subcontractor C did not provide any doors or windows to Riverside Square as of January 2007.

20. It was further part of the scheme that defendant HAWKINS, on or about January 17, 2007, submitted and caused the submission of a false Waiver of Lien for $145,000 to the title company. Defendant HAWKINS also submitted and caused the submission of, on or about January 11, 2007, a false Sworn Contractor Statement to Amcore Bank that claimed payment of $145,000 for work performed on Riverside Square by Subcontractor C, which resulted in the title company issuing the requested payment to Subcontractor C from Amcore Bank.

21. It was further part of the scheme that defendant HAWKINS discharged his debt obligation with interest to Subcontractor C through fraudulent means when Subcontractor C received payment of $145,000 from the Amcore Bank loan proceeds. Subcontractor C returned approximately $9,000 to defendant HAWKINS.

22. It was further part of the scheme that defendant HAWKINS concealed, misrepresented, and hid and caused to be concealed, misrepresented, and hidden the existence of purpose of the scheme and the acts done in furtherance of the scheme.

23. On or about the dates set forth below, at Algonquin, in the Northern District of Illinois, Eastern Division, and elsewhere,

BRUCE HAWKINS,

defendant herein, knowingly executed and attempted to execute the above-described scheme, by submitting Sworn Contract Statements containing material false statements to Amcore Bank in

connection with a loan to finance the development of Riverside Square:

| **Count** | **Date** |
|---|---|
| One | January 11, 2007 |
| Two | January 17, 2007 |
| Three | May 11, 2007 |
| Four | February 20, 2008 |
| Five | April 23, 2008 |
| Six | May 13, 2008 |
| Seven | May 13, 2008 |
| Eight | June 24, 2008 |

In violation of Title 18, United States Code, Section 1344.

## FORFEITURE ALLEGATION

The SPECIAL JANUARY 2012 GRAND JURY further charges:

1. The allegations of Counts One through Eight of this Indictment are realleged for the purpose of alleging that certain property is subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 982(a)(2)(A) and Title 28, United States Code, Section 2461(c).

2. As a result of his violation of Title 18, United States Code, Section 1344, as alleged in the foregoing Indictment,

BRUCE HAWKINS,

defendant herein, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(2)(A) and Title 28, United States Code, Section 2461(c), any and all right, title, and interest in property, real and personal, which constitutes and is derived from proceeds traceable to the charged offenses.

3. The interests of the defendant subject to forfeiture pursuant to Title 18, United States Code, Section 982(a)(2)(A) and Title 28, United States Code, Section 2461(c), include but are not limited to at least $1,017,183.

4. If any of the property subject to forfeiture and described above, as a result of any act or omission of the defendant:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third party;

(c) has been placed beyond the jurisdiction of the Court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

All pursuant to Title 18, United States Code, Section 982(a)(2)(A) and Title 28, United States Code, Section 2461(c).

A TRUE BILL:

____________________________
FOREPERSON

________________________________________
ACTING UNITED STATES ATTORNEY